UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,   Case No. 3:19-cr-264

    Plaintiff

  v.   MEMORANDUM OPINION
AND ORDER

James Robert Morgan,

    Defendant

## I.    INTRODUCTION

Before me is Defendant James Robert Morgan's motion to dismiss the indictment for failure to state an offense file pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure. (Doc. No. 18). The government filed a memorandum in opposition to dismissal, (Doc. No. 21), and Morgan filed a reply. (Doc. No. 22).

## II.    BACKGROUND

In the early morning hours of December 20, 2007, then-twenty-one-year-old James Robert Morgan got into a fight with his ex-girlfriend while extremely intoxicated. (Doc. No. 18-1 at 1). He left the scene to walk home and was called by a police officer after about the incident. (*Id.*). When Morgan disclosed his location, the officer offered to pick him up. (*Id.*). But the officer did not take him home. Instead, the officer took Morgan to a police station where he was read his *Miranda* rights and questioned. (Doc. No. 18-1 at 2; Doc. No. 18-8 at 5). Morgan was then transferred to the Corrections Center of Northwest Ohio ("CCNO") and placed in a cell, where he fell asleep. (Doc. No. 18-1 at 2).

A few hours after arriving at CCNO, Morgan was awoken and told it was time to go to court. (*Id.*). He was not taken to a courthouse but a room inside CCNO, where he appeared remotely before a Bryan, Ohio Municipal Judge. (*Id.*). There, the hearing occurred, transcribed in part, below:

> THE COURT:  Case CRB071458.  Sir, your rights have been read to you. Do you have any questions on those rights?
>
> DEFENDANT MORGAN:  No, sir.
>
> THE COURT:  Okay.  You were charged on or around the 20th day of December 2007 of a domestic violence against one Jessica Sadger.  This carries a fine of up to $1,000 and jail sentence up to 180 days in jail.
> Do you have a copy of this charge, sir?
>
> DEFENDANT MORGAN:  No.
>
> THE COURT:  One was not given to you?
>
> DEFENDANT MORGAN:  Nope.
>
> THE COURT:  All right.
>
> CORRECTIONS OFFICER:  I'll give him one.
>
> THE COURT:  All right.  Thank you.
> One will be given to you here very shortly.
> To this charge of domestic violence, how do you plead?
>
> DEFENDANT MORGAN:  Guilty.
>
> THE COURT:  All right.  There will be a waiver of your rights form given to you here shortly.  There will be five places for you to review.
>     Please look at it, and if you understand you're waiving your rights at this time and you want to do that, put your initials on those five lines and then sign and date the bottom.
>
> DEFENDANT MORGAN:  Okay.  Here?
>
> CORRECTIONS OFFICER:  You need to read these and then initial these items.  Put the date -- date at the bottom, 12/20/07, and sign it there.
>
> THE COURT:  All right.  Mr. Morgan, did you read the waiver form?
>
> DEFENDANT MORGAN:  Yeah.

    THE COURT: All right. Did you understand it?

    DEFENDANT MORGAN: Yep.

    THE COURT: And you understand you're waiving the – you're waiving those rights that were read to you on the recording?

    DEFENDANT MORGAN: Yeah.

    THE COURT: All right. And you're doing this voluntarily? No threats or promises have been made to you to get you to enter this plea today, have they?

    DEFENDANT MORGAN: No.

    THE COURT: All right.

(Doc. No. 18-8 at 2-4). After this, the judge heard evidence from the government, adjudged Morgan guilty of the misdemeanor domestic violence offense, and sentenced him. Ultimately, the entire hearing lasted approximately five minutes.

    Morgan does not remember much of this hearing perhaps because, at the time, he was tired, scared, confused, and hungover. (Doc. No. 18-1 at 2). Although Morgan did not dispute the judge's statement that he had been read his rights at the beginning of the hearing and stated he had no questions about those rights, he does not recall being read his rights prior to the hearing. (Doc. No. 18-8 at 2). The only affirmative evidence that Morgan was notified of his right to counsel is the waiver form he was instructed to sign after he had already pled guilty. (Doc. No. 18-3). Aside from this, there is a vague reference to the rights Morgan was read "on the recording." (Doc. No. 18-8 at 4). But there is no evidence of the contents of this recording.

    More than eleven years later, on May 1, 2019, Morgan was charged with four counts of possession of a firearm by a person with a prior misdemeanor domestic violence conviction in violation of 18 U.S.C. § 922(g)(9). (Doc. No. 15). The crime of domestic violence underlying these charges is his 2007 conviction described above.

### III. STANDARD

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure provides that the indictment may be dismissed for "failure to state an offense." When ruling on such a motion, the court must take the allegations of the indictment as true. *See United States v. Sampson*, 371 U.S. 75, 78-79 (1962); *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).

### IV. DISCUSSION

Section 922(g)(9) of the United States Criminal Code makes it "unlawful for any person[,] who has been convicted in any court of a misdemeanor crime of domestic violence, to … possess in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g)(9). In defining a "misdemeanor crime of domestic violence," the Code explains that "[a] person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless … the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case[.]" 18 U.S.C. § 921(a)(33)(B)(i)(II).

Here, Morgan contends he cannot be guilty of the charged offenses because his underlying misdemeanor conviction was not secured with counsel or a knowing and intelligent waiver of his right to counsel. (Doc. No. 18). Contrary to the government's argument, Morgan does not seek to impermissibly collaterally challenge his 2007 conviction at this time. Rather, Morgan contends the 2007 conviction does not fall within the statutory definition of "misdemeanor crime of domestic violence." But, because this is not a collateral challenge, whether the Ohio Criminal Rules were followed is beyond the scope of my review. Instead, the limited question before me is whether Morgan knowingly and intelligently waived his right to counsel as contemplated by the legal definition found in Section 921.

The Sixth Amendment provides criminal defendants the right "to have the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. A criminal defendant may waive this right, but

4

such a waiver must be "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). That is, a criminal defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)).

There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Id.* But "in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand" to ensure "there is an intelligent and competent waiver by the accused." *Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948). Those case-specific circumstances to be considered include "the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Tovar*, 541 U.S. at 88.

In this case, Morgan represented himself while entering a guilty plea. Therefore, for his waiver of counsel

> [t]o be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Von Moltke*, 332 U.S. at 724 (cited by *Akins v. Easterling*, 648 F.3d 380, 395-96 (6th Cir. 2011)); *see also Tovar,* 541 U.S. at 81 ("The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.").

These requirements were not met in Morgan's case. It is undisputed that the judge advised Morgan of the nature of his charges and the range of allowable punishments before taking his guilty

plea. (Doc. No. 18-8 at 2). But, before taking Morgan's plea, the judge mentioned "rights" in only the following statement: "Sir, your rights have been read to you. Do you have any questions on those rights?" (*Id.*). Although there is a later reference to a recorded reading of rights, there is no evidence of the contents of that recording. And again, Morgan has denied ever receiving any explanation of his rights. Also troubling is the judge's assumption that Morgan had a copy of the charge before the proceeding, when he clearly did not, and was then hastily provided one by the corrections officer.

The only evidence that Morgan was advised of his right to counsel is the waiver-of-rights form and Morgan's affirmation that he understood that form. But, in light of the strong presumption against waiver of the right to counsel and the record as a whole, this form alone is insufficient to establish that Morgan knowingly and intelligently waived his right to counsel.

First, this waiver form was presented to Morgan only *after* he pled guilty. The judge never asked whether Morgan wished to waive any of his rights before taking his guilty plea. Therefore, this form is not evidence that Morgan was informed of his right to counsel before pleading guilty.

Aside from this timing issue is the deficiency of the judge's inquiry surrounding the waiver itself. The Supreme Court has cautioned that "a mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel" and, therefore, "may be inadequate." *Von Moltke*, 332 U.S. at 724; *contra United States v. Kohorst*, 972 F.2d 349 (Table), 1992 WL 192571 (6th Cir. 1992) (finding a written waiver alone to be adequate when the recording of the proceeding was destroyed).

Here, after Morgan had already signed the waiver form per the judge's instruction, the judge asked Morgan whether he read and understood the form and whether he understood that he was waiving the rights read on the elusive recording. (Doc. No. 18-8 at 4). To these questions, Morgan

6

answered: "yeah" and "yep." (*Id.*).  The judge did not explain any of the rights on the waiver form or attempt to advise Morgan of the "dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835.  As such, this was, at best, an inadequate "mere routine inquiry."

Finally, the circumstances here indicate Morgan's waiver of counsel was not "made with eyes open."  At the time, Morgan had just been awoken in a cell at CCNO after only a few hours of sleep following a night of heavy drinking.  He was twenty-one years old and had been arrested just hours before.

Considering the circumstances and the record as a whole, I find Morgan's 2007 domestic violence conviction was not secured with counsel or a knowingly and intelligently waiver of the right to counsel.  Therefore, his 2007 conviction does not qualify as a "misdemeanor crime of domestic violence" as legally defined by Section 921.

## V.  CONCLUSION

For the foregoing reasons, Morgan's motion to dismiss the indictment is granted.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge